FILED
2024 May-24  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (Southern Division)

| | | |
|---|---|---|
| Tommy Turner and<br>Troy Montgomery, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| | ) | |
| Warrior Met Coal Mining, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The plaintiffs Tommy Turner and Troy Montgomery complain against the defendant Warrior Met Coal Mining LLC (hereinafter "Warrior Met") as follows:

## JURISDICTION

1.      Mr. Turner and Mr. Montgomery sue Warrior Met for unlawful race discrimination in employment and for retaliation related to complaints of such discrimination. The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1981, 42 U.S.C. 2000e-2, 3 & 5 (Title VII) and 28 U.S.C. § 1331 (federal question).

## PARTIES & VENUE

2.      Mr. Turner is an African American former employee of the defendant Warrior Met. He worked as an underground coal miner at Warrior Met's No. 7 mine. Mr. Turner resides in Jefferson County, Alabama.  Mr. Turner timely filed an EEOC

charge alleging race discrimination and retaliation.  Mr. Turner received a notice of right to sue issued on February 23, 2024.

3.     Mr. Montgomery is an African American employee of the defendant Warrior Met. He works as an underground coal miner at Warrior Met's No. 7 mine. Mr. Montgomery resides in Walker County, Alabama. Mr. Montgomery timely filed an EEOC charge alleging race discrimination and retaliation.  Mr. Montgomery received a notice of right to sue dated April 18, 2024.

4.     The defendant Warrior Met is limited liability company. Warrior Met is a coal mining company. Warrior Met employed Mr. Turner and Mr. Montgomery to work in the No.7 mine.  Warrior Met's No. 7 East mine is located in Jefferson County, Alabama.

## FACTUAL ALLEGATIONS

5.     Mr. Turner is a former employee of the defendant Warrior Met.  Mr. Turner is African American.

6.     Mr. Montgomery is a current employee of the defendant Warrior Met. He is African American.

7.     Mr. Tuner and Mr. Montgomery work or worked in the job position of motorman at Warrior Met's No. 7 East mine.  The motorman operates equipment that hauls materials to different locations in the mine.  The motorman is assigned to the haulage department/area.

2

8.    At the beginning of each shift, Warrior Met's supervisors assign each person working as a motormen equipment and specific tasks.

9.    One such task is hauling shields that support the ceiling as the long wall machine shears coal.  When a motorman was assigned to haul shields, he was paid approximately three dollars more above the regular hourly rate for the motorman classification.

10.    Employees at Warrior Met engaged in work stoppage from April 1, 2021 to February 16, 2023.

11.    Mr. Turner and Mr. Montgomery returned to work in May 2023 after passing a drug screen, a physical and receiving mine safety training.

12.    Prior to the work stoppage all the motormen working at No. 7 East were black employees.  When Tuner and Montgomery returned to work, they observed that in addition to approximately six black motormen who returned to work, Warrior Met had hired four white employees to work as motormen. The white employees were performing the duties of a motorman that Turner and Montgomery had previously performed.

13.    At the beginning of each shift, employees are assigned specific tasks. Turner and Montgomery observed that white supervisors were assigning the more desirable work of hauling shields to the white employees. Turner and Montgomery

3

were assigned the demeaning task of cleaning up trash which included waste toilet paper.

14.    Turner and Montgomery also noticed that the other black motormen were assigned more difficult and less desirable work while the white employees were allowed to stand around after completing their tasks.

15.    The white supervisors also assigned better equipment to the white employees.   The better equipment affected the ability of African American employees to perform their jobs and meet the employer's performance and safety requirements.

16.    Turner and Montgomery complained that the white employees were making more pay for hauling shields and they wanted the opportunity to make extra pay.

17.    Mr. Montgomery complained to mine management about the lack of opportunity given to black motormen to earn extra pay.

18.    Mr. Turner raised the same complaint about unfair work assignments to Steve Sloan.  Mr. Sloan told Turner that he and Jared Jones had the right to make assignments as they see fit.

19.    Turner and Montgomery complained about white employees receiving most if not all the shield hauling assignments which allowed them to earn premium

pay, the Defendant stopped paying premium pay for hauling shields. However, the white employees continued to receive most of the hauling assignments.

20.    A co-worker of Turner and Montgomery named Corinthian Collins confronted the immediate supervisor Jared Jones ("JJ") about giving preferable shield hauling tasks to the white employees and allowing them to earn extra pay. When Mr. Collins made this comment, Jones said that if he didn't like how he ran this show, Collins could get his lunch box and get on the cage. The cage is the elevator that takes employees above ground. When a supervisor tells an employee to get on the cage, it means that the employee is being removed from the work site.

21.    Mr. Jones escorted Mr. Collins to David Scott's (the mine superintendent) office. Collins told Scott that he had more experience than the white employees and had bid into the motorman position based on his seniority. He questioned why the white employees with less seniority and who had not bid into the motorman position were allowed to run all the shield hauls and earn the longwall pay. Scott responded that the "JJ" can run the show how he wanted since he's the supervisor and that he'll just stop the motormen from receiving extra pay for hauling shields.

22.    As he was leaving the superintendent's office, Josh Hallman (the white assistant shift foreman) pulled "JJ" aside and told him to assign Mr. Collins to shovel

in the dust hole.  Mr. Collins heard Mr. Hallman say that if Collins did not fill two dumpsters with rock dust by the end of the shift, he would be fired.

23.    Collins returned underground and his supervisors said that they had another assignment for him and placed in the dust hole to shovel rock dust. Mr. Collins told Mr. Jones that he suffered from acute bronchitis and that it was wrong for him to be assigned to shovel rock dust for hours.  Mr. Collins nonetheless filled two dumpsters with rock dust. Both Montgomery and Turner were present when Collins was given the "special" assignment of shoveling rock dust.

24.    When Mr. Collins returned to work the next day (Friday June 2, 2023), Josh Hallman made the comment "Are you back?"  Mr. Collins just looked at him and did not respond. Mr. Collins and several other workers then dropped underground.  Mr. Hallman dropped underground after Collins had dropped and pulled Mr. Jones to the side before assignments for the day had been made.  When Jones finished talking to Hallman, he assigned Collins to shovel rock dust on the off-side of the belt alone and without a radio. Working on the off-side of the belt is more dangerous and normally requires two employees and a radio for communication.

25.    Collins told Mr. Jones again that he suffered from acute bronchitis and that it was wrong to assign to him to shovel rock dust for an entire shift. Mr. Jones responded "you have to do what Hallman wants you to do." Turner and Montgomery

6

had never observed an employee being assigned to shovel rock dust for an entire shift.

26.    Mr. Turner and Mr. Montgomery observed their supervisors' treatment of Mr. Collins. Collins also relayed what had happened to him when he met with management.

## COUNT I

### (Section 1981- Race Discrimination)

27.    Mr. Turner is an African American former employee of Warrior Met. Mr. Turner started working for Warrior Met and its predecessor in 2009.

28.    Mr. Montgomery is an African American employee of Warrior Met. Mr. Montgomery has worked for Warrior Met and its predecessor since 2006.

29.    The Defendant (acting through its supervisors and managers Jared Jones, Steve Sloan and Josh Hallman) assigned higher paying work to white employees who had less experience than Montgomery or Turner and who had not bid into the motorman position.

30.    The Defendant assigned Mr. Turner and Mr. Montgomery to perform more demeaning work such as picking up trash.  The Defendant did not assign such work to his white co-workers who less experience than the black employees.

31.    The Defendant allowed white employees to take breaks and/or to rest when work was slow but did not allow Mr. Turner and Mr. Montgomery to do so and constantly required them to be doing something.

32.    The Defendant assigned better equipment to the white employees and/or gave them first choice of equipment to operate.  This affected the performance of the work assigned to Mr. Turner and Mr. Montgomery and other black employees.

33.    The Defendant's supervisor Jones treated the white employees more favorably than he treated Mr. Turner and Mr. Montgomery in that he was observed socializing with the white employees and not demanding them to always be working. Mr. Turner and Mr. Montgomery observed that Jones treated the black employees with more hostility than the white employees.

34.    The Defendant's supervisors and managers discriminated against Mr. Turner and Mr. Montgomery as described herein because of their race.

35.    Mr. Turner and Mr. Montgomery suffered economic and non-economic harm (such as mental anguish and distress) as a result of the Defendant discriminating on the basis of race.

36.    The conduct described in Count I (along with the factual allegations contained in paragraphs 5 through 16) violated Section 1981 prohibition against race discrimination.

## COUNT II

### (Section 1981 Retaliation)

37.    Turner and Montgomery complained to supervisors/managers Jared Jones, Josh Hallman, Steve Sloan and/or David Scott that white employees (who had less seniority and who had not bid into the motorman position) were receiving more favorable assignments and equipment.  Turner and Montgomery complained that Jones and Hallman assigned the white employees to only haul shields and that this resulted in them receiving higher pay.

38.    The Defendant retaliated against Turner and Montgomery by stating that it would eliminate the practice of higher pay for motorman assigned to haul shields. Moreover, Turner and Montgomery observed the further retaliation that Mr. Collins experienced (e.g. shoveling rock dust etc.) when Collins openly questioned Jones about the favorable treatment he gave to white co-workers. Collins was more outspoken about complaints of discrimination than other black employees who feared retaliation.  As result of the retaliation Collins experienced, Turner and Montgomery feared the same treatment and it impacted their working conditions.

39.    Neither Turner or Montgomery were provided the opportunity to earn higher pay for hauling shields.  But-for the Plaintiffs' complaints about not having an opportunity to earn premium pay that was afforded to white employees, the Defendant would not have terminated the premium pay practice.

9

40.    The Defendant's decision to eliminate the premium paid to white employees for hauling shields and to deprive the Plaintiffs the same benefit constitutes retaliation in violation of Section 1981.  Likewise, the retaliation directed at Mr. Collins and that Turner and Montgomery observed constitutes unlawful retaliation experienced by Montgomery and Turner under Section 1981 because it had a chilling effect on their protected activity.

41.    Plaintiff's suffered economic and non-economic loss as a result of the Defendant's retaliatory conduct.

## COUNT III

### (Title VII – Discrimination)

42.    Mr. Turner is an African American former employee of Warrior Met.

43.    Mr. Montgomery is an African American person currently employed with Warrior Met.

44.    The Defendant (acting through its supervisors and managers Jared Jones, Steve Sloan and Josh Hallman) assigned higher paying work to white employees who had less experience than Turner or Montgomery and who had not bid into the motorman position.

45.    The Defendant assigned Mr. Turner and Mr. Montgomery to perform more demeaning work such as picking up trash.  The Defendant did not assign such work to his white co-workers who less experience than the black employees.

46.     The Defendant allowed white employees to take breaks and/or to rest when work was slow but did not allow Mr. Turner and Mr. Montgomery to do so and constantly required them to be doing something.

47.     The Defendant assigned better equipment to the white employees and/or gave them first choice of equipment to operate.  This affected the performance of the work assigned to Mr. Turner and Mr. Montgomery and other black employees.

48.     The Defendant's supervisor Jones treated the white employees more favorably than he treated, Mr. Turner and Mr. Montgomery in that he was observed socializing with the white employees and not demanding them to always be working. Mr. Turner and Mr. Montgomery observed that Jones treated the black employees with more hostility than the white employees.

49.     The Defendant's supervisors and managers discriminated against Mr. Montgomery and Mr. Turner as described herein because of their race. Plaintiffs' race was a factor in the decisions to deprive them to opportunity to earn premium pay by hauling shields, to eliminate premium pay for hauling shields, in the work and equipment assignments they received, and/or the less favorable working conditions than provided to white co-workers as described in paragraphs

50.     Mr. Turner and Mr. Montgomery suffered economic and non-economic harm (such as mental anguish and distress) as a result of the Defendant discriminating on the basis of race.

11

51.     The conduct described in Count III (along with the factual allegations contained in paragraphs 5 through 26) violated Title VII's prohibition against race discrimination.

## COUNT IV

### (Title VII Retaliation)

52.     Turner and Montgomery complained to supervisors/managers Jared Jones, Josh Hallman, Steve Sloan and/or David Scott that white employees (who had less seniority and who had not bid into the motorman position) were receiving more favorable assignments and equipment.  Turner and Montgomery complained that Jones and Hallman assigned the white employees to only haul shields and that this resulted in them receiving higher pay.

53.     Turner and Montgomery also observed the further retaliation that Mr. Collins experienced (e.g. shoveling rock dust etc.) when Collins openly questioned Jones about the favorable treatment he gave to white co-workers. Collins was more outspoken about complaints of discrimination than other black employees who feared retaliation.  As result of the retaliation Collins experienced as described above, Turner and Montgomery feared the same treatment and it impacted their working conditions.

54.     Plaintiffs' complaints of race discrimination constituted protected activity under Title VII.

55.     Neither Turner or Montgomery were provided the opportunity to earn higher pay for hauling shields on the same basis as white co-workers.  But-for the Plaintiffs' complaints about not having an opportunity to earn premium pay that was afforded to white employees, the Defendant would not have terminated the premium pay practice.

56.     The Defendant's decision to eliminate the premium paid to white employees for hauling shields and to deprive the Plaintiffs the same benefit constitutes retaliation in violation of Title VII.  Likewise, the retaliation directed at Mr. Collins and that Turner and Montgomery observed constitutes unlawful retaliation experienced by Montgomery and Turner under Title VII because it had a chilling effect on their protected activity.

57.     Plaintiffs suffered economic and non-economic loss as a result of the Defendant's retaliatory conduct.

## PRAYER FOR RELIEF

83.     Wherefore premises considered, Mr. Turner and Mr. Montgomery respectfully request that this Court enter an order requiring the Defendant to:

(a)     pay Mr. Turner and Mr. Montgomery lost wages or income resulting from violations of Section 1981 and/or Title VII;

(c)     pay Mr. Turner and Mr. Montgomery compensatory and/or punitive damages;

13

(e)    pay Mr. Turner and/or Mr. Montgomery's counsel a reasonable attorney fee and costs of litigation including expert witness fees to the extent recoverable;

(f)    undertake any other conduct the Court deems appropriate either in law or equity to remedy the violations of Section 1981 and/or Title VII.

## JURY DEMAND

The Plaintiffs demand a trial by jury on all claims.

/s/ *Richard P. Rouco*
Richard P. Rouco

**OF COUNSEL**:

Quinn Connor Weaver
Davies & Rouco
2 – 20th Street North
Suite 930
Birmingham, AL 35203